[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This action is brought in four counts, under the entry and detainer statute, Conn. Gen. Stat. 47a-43 et seq., and related claims of conversion, constructive eviction and violation of the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. 42-110a
et seq. The plaintiff Nicole Carter is the adult daughter of the co-plaintiff Theresa Rhodes. Beginning in the spring of 1990, they rented apartment number A-3 at 505 Sawmill Road in West Haven (the "premises.") The defendant William Rand was the superintendent of the apartment building and the defendant Carla Lukas was the owner of record of the building.
In their revised complaint, the plaintiffs allege that they were in possession of the premises until on or about December 15, 1990, when they arrived home from vacation to find the apartment flooded. The complaint further alleges that after the plaintiffs left the premises that day because of the flooding, "Defendant William Rand, acting with authority from Defendant Carla Lukas, made forcible entry into the dwelling unit and with strong hand detained the same and took the furniture, clothing and personal property of plaintiffs and disposed of it at the dump. " These allegations were denied by the defendants, who also filed several CT Page 7420 special defenses.
The plaintiffs offered no testimony in support of their allegations against Carla Lukas. They did offer into evidence Ms. Lukas' two-page deposition transcript, which establishes that she was the record owner of the premises. However, the deposition further establishes that she has never entered this apartment building and that she takes no role in its management. It can be inferred from her deposition testimony that her husband was the purchaser of the property and that he may be involved with its management.
The plaintiffs further failed to address their claim against Ms. Lukas in their post-trial memorandum. The memorandum provides no argument or legal authority in support of their claim against Ms. Lukas. Instead, the memorandum addresses at length the failure of Mr. Lukas to testify at trial. The memorandum sets forth numerous facts not in the record relating to plaintiffs' attempts to depose Mr. Lukas and their attempts to subpoena him to testify at trial. The plaintiffs improperly appended notices of deposition and subpoenas to their memorandum. None of this evidence was offered at trial and it is therefore not properly before the court. The plaintiffs have asked the court to draw an adverse inference from the failure of the defendants to produce Mr. Lukas as a witness at trial. Secondino v. New Haven Gas Co., 147 Conn. 672 (1960).
There are two requirements for the operation of the adverse inference rule. The first is that the witness must be available. Id. at 675. The plaintiffs made no showing that Mr. Lukas was available to testify during the trial of this matter. The second requirement is that the witness must be someone whom the other party would "naturally produce." Id. The witness must be someone who "could reasonably be expected to have peculiar or superior information material to the case which, if favorable, the party would produce." Id. The plaintiffs have failed to establish this requirement as well. It must be noted first that Mr. Lukas is not a defendant in this matter. The issue is whether Ms. Lukas or Mr. Rand would naturally be expected to produce Mr. Lukas as a witness. The court finds that there is no basis for such a finding. The plaintiffs' case against Ms. Lukas was quite weak and was effectively rebutted by her own deposition testimony. Mr. Rand's contention was that he never personally removed any of the plaintiffs' belongings from their apartment, that he thought the plaintiffs had abandoned the apartment as of the end of November and that when the apartment was cleaned, it was done by two other men, not by Rand. There is no basis for a finding that Mr. Lukas had superior information which Mr. Rand would naturally be expected to produce. CT Page 7421
The plaintiffs failed to sustain their burden of proof with respect to the allegations of the complaint as to Carla Lukas. The plaintiffs alleged that Mr. Rand acted with authority from Ms. Lukas and there was no proof of this. Judgment is entered for the defendant Carla Lukas, with costs.
The court next considers the plaintiffs' claims against Mr. Rand. The plaintiffs presented their own testimony and the testimony of a third witness, Janie Pratt, by deposition. Ms. Pratt is the mother of Ms. Rhodes and the grandmother of Ms. Carter. Ms. Carter testified that on December 13 or 14, she and her mother and grandmother returned from a two or three week vacation in South Carolina. She testified that when they came back to West Haven, they first went to her grandmother's nearby apartment, where her mother grandmother stayed while she went to check on the apartment. Ms. Carter testified that when she opened the locked door to the apartment, she stepped into a puddle and soaked her feet. Pipes had burst, she said, and "everything" was wet and damaged. She found Mr. Rand, the superintendent, and showed him the water. She then returned to her grandmother's apartment to tell her mother.
Ms. Carter testified that she did not remove any of their belongings that night, but returned to the premises the next morning with her grandfather and a rented truck. They made two trips with the truck, removing a sofa and the dining room set. They removed nothing else and "never" took anything else out, she testified, although the premises was fully furnished and allegedly contained clothing, jewelry, a television, a stereo and a VCR. The next day when she returned again she found two men there who had cleaned out the apartment, removing all of the plaintiffs' personal property and disposing of it. She did not see Mr. Rand remove any property.
Ms. Rhodes' testimony corroborated her daughter's testimony in most respects and she testified as to the items of personal property which were removed, and their value. She admitted, however, that after the vacation to South Carolina she herself never returned to the premises.
Ms. Pratt's testimony in her deposition contradicts that of her daughter and granddaughter. She testified that Ms. Carter did not go to South Carolina, but stayed in Ms. Pratt's apartment while Ms. Rhodes and Ms. Pratt went to South Carolina. She further testified that the trip to South Carolina took only one week. (Ms. Carter testified they were away two to three weeks). Ms. Pratt testified that her granddaughter and her husband rented the truck the day before she and her daughter returned from South Carolina and that they still had the truck when Ms. Pratt and Ms. Rhodes returned. She testified that the truck was never used to CT Page 7422 move anything because everything had been removed before Ms. Carter and Mr. Pratt arrived.
For the defense, Mr. Rand testified that two weeks or so before the December 14 or 15 date, he entered the apartment because of a water leak and that he saw nothing of value in the apartment, which was in disarray. The apartment had no electricity, gave off a bad odor and had cockroaches all over. He thought no one could possibly be living there because of these conditions so he called Mr. Lukas, who told him to wait a while before doing anything. Rand waited two weeks and then saw the plaintiffs' truck. Thereafter, two men cleaned the apartment, removing debris and dirty clothing piled on the floor. Mr. Rand testified that he did not remove any personal property.
Ossie Gay, the most credible of all the witnesses at trial, testified that he was one of the two men paid to clean the premises in mid-December. He testified that everything he saw in the apartment was dirty: dirty pots and pans in the sink, clothes and shoes scattered on the living room floor and a refrigerator full of spoiled food. The condition of the refrigerator was so bad that it had to be disposed of at the dump. He saw nothing of value there, no television, stereo, VCR or furniture. He confirmed that the electricity was off.
The plaintiffs have the burden of proving to the court that they were in possession of the premises on or about December 14, 1990.
 A plaintiff suing under the forcible entry and detainer statute must prove his actual possession of the land or property from which he claims to have been dispossessed. Carrier v. Carrier, 85 Conn. 203, 207, 82 A. 187
(1912); Bell v. Raymond, 18 Conn. 91, 100
(1846).
Communiter Break Co. v. Scinto, 196 Conn. 390, 393 (1985). The plaintiffs have failed to sustain their burden of proof with respect to possess on of the premises.
In order to make any sense of the conflicting testimony with respect to the plaintiffs' possession of the premises, it is helpful to be aware of two undisputed facts. First, the plaintiffs' apartment had been without electricity since September 27, 1990, when United Illuminating terminated the electricity because of nonpayment. The lack of electricity meant that there was no heat or hot water in the apartment at all times since September 27, 1990. Electric service was not restored. Secondly, on November 16, 1990, the Superior Court Housing CT Page 7423 Session entered judgment by default against the plaintiffs in a summary process action for nonpayment of rent. The plaintiffs were defaulted for failure to appear in the eviction action.
These objective facts, coupled with serious questions about the plaintiffs' credibility, lead the court to conclude that plaintiffs have not sustained their burden of proof with respect to possession. The testimony of Nicole Carter was not credible. Counsel for the defendants has pointed out in his brief in detail the numerous contradictions, inconsistencies and other problems with Ms. Carter's testimony. She testified directly contrary to her deposition testimony. She changed her testimony on cross-examination. She offered implausible testimony. For example, she said that she and her grandfather removed an entertainment center from the water-soaked apartment, but that they left behind the television, stereo and VCR, all of which were kept on the entertainment center, putting these valuable items in a dry spot on the floor of the apartment, never to be seen again thereafter. Her testimony was contradicted by more reliable, non-party witnesses. Ms. Carter's grandmother testified that Ms. Carter did not go to South Carolina on vacation but that she stayed behind at her grandmother's apartment. This testimony not only contradicts Ms. Carter's, but also establishes that Ms. Carter was not residing at the premises, which after all had no electricity, no heat and no hot water during the month of December.
Ms. Pratt's testimony also establishes that the truck was rented by Ms. Carter and Mr. Pratt before Ms. Rhodes and Ms. Pratt returned from vacation. This testimony contradicts Ms. Carter's and also provides evidence from which the court can infer that the plaintiffs were vacating the premises before December 15, perhaps in response to the summary process judgment.
Although somewhat more credible than Ms. Carter's, Ms. Rhodes' testimony was contradicted as well. She testified that the rent was always paid, but this was contradicted by the evidence that the plaintiffs allowed judgment to enter against them for nonpayment of rent for the month of October, 1990.
The court also relies on the credible testimony of Mr. Gay, who described the premises as he saw it on the day he helped clean the apartment. It did not appear to be an occupied apartment and it contained nothing of value. Interestingly, he did remember that he saw a trunk there. He said, however, that a young lady came to take it away. His description of the young woman watched the description of Ms. Carter.
Based on all the evidence, the court finds that the plaintiffs failed to sustain their burden of proving that they CT Page 7424 and/or their personal property of value were in actual possession of the premises on or about December 14, 1990. This insufficiency of evidence is dispositive of all of plaintiffs' claims. The conversion and constructive eviction claims also depend on a finding of possession of the premises and removal of the alleged personal property. The CUTPA claim is based on the entry and detainer claim, which is not sustained.
Judgment is entered for the defendant William Rand, with costs.
Vertefeuille, J.